**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| 9ROUND FRANCHISING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. |
| EVX, LLC, JIM BATTINUS, JEFF BATTINUS, | ) | |
| AND KEN BATTINUS, | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

COMES NOW 9Round Franchising, LLC ("Plaintiff" or "9Round"), seeking an Order from the Court prohibiting and enjoining Defendants EVX, LLC ("EVX"), Jim Battinus, Jeff Battinus, and Ken Battinus (collectively, "Defendants") from using 9Round's trademarks and other proprietary materials and from operating a fitness center in competition with 9Round following the termination of a franchise agreement, and further complains of Defendants as follows:

**PARTIES**

1.      9Round is a limited liability company organized under the laws of South Carolina, with its principal place of business in Simpsonville, Greenville County, South Carolina.

2.      Upon information and belief, EVX is a limited liability company organized under the laws of Illinois, with its principal place of business in Evanston, Illinois.

3.      Upon information and belief, Jim Battinus, Jeff Battinus, and Ken Battinus are all residents and citizens of Illinois.

**JURISDICTION AND VENUE**

4.      The Court has original subject matter jurisdiction pursuant to the Lanham Act, 15

U.S.C. § 1051 *et seq*., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the claims under the Lanham Act.

5.      The Franchise Agreement executed by Defendants and dated August 11, 2015 (the "Evanston Agreement", attached hereto as Exhibit "A") allows for a claim for preliminary or permanent injunctive relief to be brought at any time, including without limitation, prior to or during the pendency o[f] any arbitration proceeding initiated under Section 12.A.  *See* Ex. A, § 12(B).

## FACTS

6.      Defendants signed the Evanston Agreement with Plaintiff in order to operate a "Center" with 9Round's trade name in Evanston, Illinois.  *See* Ex. "A."

7.      9Round grants licenses to franchisees to use its federally registered trademarks (the "Marks") and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect its valuable trade secrets, reputation, goodwill, and other legitimate business interests.   *See* Ex. "A," § 3(A)-(D).

8.      9Round's Marks include, but are not limited to, U.S. Registration Numbers 4,571,726, 4,457,591, 4,713,987, and 3,601,884.  *See* Ex. "A," Attachment A.

9.      Jim Battinus signed the Evanston Agreement on behalf of EVX, and Jim Battinus, Jeff Battinus, and Ken Battinus all signed the Personal Guaranty, as an Attachment to the Evanston Agreement. *See* Ex. "A," Attachment C.

10.     The Personal Guaranty provides that Jim Battinus, Jeff Battinus, and Ken Battinus: "agree to be personally bound by each and every condition and term contained in the Evanston Agreement, including but not limited to the non-compete provisions in paragraph 10.D, and agree that this Personal Guarantee will be construed as though the undersigned and each of them

executed a Franchise Agreement containing the identical terms and conditions of this Franchise Agreement." *See* Ex. "A", Attachment C.

11.     Per the Evanston Agreement, Jim Battinus was a 31% Principal Owner, Jeff Battinus was a 60% Principal Owner, and Ken Battinus was a 9% Owner. *See* Ex. "A."

12.     The Evanston Agreement had a term of ten years. *See* Ex. "A," § 4(A).

13.     The Evanston Agreement stated that Defendants would be in default of the Agreement if they breached the terms of the agreement, which would include "conviction of you, a Principal Owner, or a guarantor of (or pleading no contest to) (a) any misdemeanor that brings or tends to bring any of the Marks into disrepute or impairs or tends to impair your reputation of the goodwill of any of the Marks of the Center or (b) any felony." Ex. "A," § 13(A)(iii).

14.     The Evanston Agreement further stated that in the event of a termination, and for two years after the termination, Defendants would not directly or indirectly compete with Plaintiff. *See* Ex. "A," § 10(D).

15.     In this regard, the Evanston Agreement specifically provides as follows:

> For a period of two years after the transfer, expiration or termination of this Agreement (and with respect to any Owner, for a period of two years after such person ceases to be a Owner, regardless of the reason), Covered Persons must not directly or indirectly, for themselves or through, on behalf of or in conjunction with any individual or business entity: *(i)* divert any Center member, potential Center member or former Center member to any fitness center or club except another 9Round® Center; or *(ii)* own, operate, lease, franchise, engage in, be connected with, have any interest in, or assist any person or entity engaged in any other fitness center or club (including, but not limited to fitness center, club, studio or exercise facility featuring boxing, kickboxing or a circuit training program) that is located at or within a 10-mile radius of the Authorized Location, that is located within a 10-mile radius of any other 9Round® Center in operation or under construction, or that is located in the Designated Area of any other 9Round® franchisee. The two year period described in this paragraph will be tolled during any period of noncompliance.

*See* Ex. "A," § 10(D)(3).

16. The Agreement also stated that upon the termination of the Agreement:

All of your rights to the use of the Marks and all other rights and licenses granted in this Agreement and the right and license to conduct business under the Marks at the Authorized Location will revert to us without further act or deed of any party. All of your right, title and interest in, to and under this Agreement will become our property. You must immediately comply with the post-term non-compete obligations under Section 10.D, cease all use and display of the Marks and of any proprietary material (including the Manual) and of all or any portion of promotional materials furnished or approved by us, assign all right, title and interest in the telephone numbers for the Center and cancel or assign, at our option, any assumed name rights or equivalent registrations filed with authorities.

*See* Ex. "A," § 14(A).

17. The Evanston Agreement also provides that certain "Confidential Information" provided to Defendants, including information regarding current and former members and operation materials, may be used "only for the purpose of operating the Center." *See* Ex. "A," § 6(H).

18. 9Round also entered into a Franchise Agreement (dated October 30, 2017) with Arlington Heights Circuit Training, LLC, which was wholly owned by Ken Battinus, for the operation of a 9Round franchise in Arlington Heights, Illinois. A true and correct copy of this Franchise Agreement (hereinafter the "Arlington Heights Agreement") is attached hereto as Exhibit "B."

19. The Arlington Heights Agreement contains non-compete provisions identical to those issued to Defendants with regard to the Evanston Agreement. *See* Ex. "B," § 10(D)(3).

20. Ken Battinus executed a Personal Guaranty with regard to the Arlington Heights Agreement, which is identical to the Personal Guaranty executed by the Defendants with regard to the Evanston Agreement. *See* Ex. "B," Attachment C.

21. The Arlington Heights Agreement also contained provisions identical to the Evanston Agreement authorizing actions for injunctive relief, including injunctive actions for

violation of the Arlington Heights Agreement's non-compete provision. *See* Ex. "B," §§ 10(D)(7), 12(B).

22.     The Arlington Heights franchise location was closed in June 2020. 9Round sent Ken Battinus a letter dated June 22, 2020, advising that Arlington Heights Circuit Training, LLC has defaulted on the Arlington Heights Agreement. A true and correct copy of this letter is attached hereto as Exhibit "C."

23.     On or about May 4, 2021, Plaintiff became aware that Defendant Ken Battinus pleaded guilty to a Class-4 Felony in the state of Illinois. That same day Plaintiff sent Defendants a letter stating that pursuant to the Evanston Agreement, a felony conviction by a guarantor was a breach of the Evanston Agreement. A true and correct copy of this letter is attached hereto as Exhibit "D."

24.     Plaintiff offered to "mediate the situation" by giving Defendants an opportunity to address the breach within seven days by removing Ken Battinus from ownership, no longer allowing him to associate himself with Plaintiff's brand in any way, and not allowing him to enter the premises of the Center. *See* Ex. "D."

25.     Defendants did not respond to Plaintiff's May 4, 2021 letter.

26.     On or about May 12, 2021, Plaintiff sent another letter notifying Defendants of their breach of the Evanston Agreement, offering Defendants another seven days to respond, and of Plaintiff's intent to seek termination of the Agreement if no response was received. A true and correct copy of this letter is attached hereto as Exhibit "E."

27.     Defendants did not respond to Plaintiff's May 12, 2021 letter.

28.     On or about May 20, 2021, Plaintiff made one last attempt to reach Defendants and offered them an opportunity to cure the default of the Evanston Agreement, to no avail. A true

and correct copy of this letter is attached hereto as Exhibit "F."

29.     On or about June 1, 2021, Plaintiff served Defendants with a notice of termination of the Evanston Agreement, notifying Defendants of the requirement that they promptly de-identify as required by Section 14 of the Evanston Agreement and shut down the Center by the end of business on June 3, 2021. A true and correct copy of this letter is attached hereto as Exhibit "G."

30.     On June 2, 2021, Defendants emailed Plaintiff stating they were in the "process of removing Ken" Battinus. A true and correct copy of this e-mail is attached hereto as part of Exhibit "H."

31.     On June 3, 2021, Plaintiff responded to Defendant's June 2, 2021 email stating that the Evanston Agreement had been terminated. A true and correct copy of this e-mail is attached hereto as part of Exhibit "H."

32.     In June and July 2021 following the termination, Defendants continued to utilize 9Round's Marks in operating the Center. *See* Declaration of Alicia Obertin, attached hereto as Exhibit "I," ¶¶ 3, 5, and photographs attached as Exhibits "J" and "K."

33.     An exercise facility continues to operate at the address of the Center, which is advertised on Facebook. *See* Ex. I, ¶¶ 6, 7 and Exhibits "1" and "2" attached to Ex. I.

34.     Despite the termination of the Evanston Agreement, and upon information and belief, Defendants are still operating the Center using 9Round's trademarks and proprietary materials.

**Count I**
**Federal Trademark Infringement**

35.     9Round repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

36.     Upon information and belief, Defendants have used and continue to use the Center as an exercise facility and continued to display the Marks at the Center after termination of the Evanston Agreement.

37.     Defendants' conduct has infringed on the trademark rights owned by 9Round, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

38.     Through their unauthorized display of the Marks, Defendants profited and 9Round has been damaged.

39.     The acts by Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

40.     As a result, 9Round has suffered and/or will continue to suffer irreparable injury, and is entitled to an injunction against Defendants precluding continued use of 9Round's Marks.

**Count II**
**False Designation and Misrepresentation of Origin**

41.     9Round repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

42.     The unlawful conduct by Defendants set forth herein constitutes false designation of origin and misrepresentation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43.     By reason of the foregoing, 9Round has suffered damages to the value of the Marks and to customer goodwill.

44.     The acts by 9Round were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

45.     As a result, 9Round has suffered and/or will continue to suffer irreparable injury, and is entitled to an injunction against Defendants precluding them from representing that the Center is a 9Round franchise.

## Count III
## Federal Trademark Dilution

46.     9Round repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

47.     The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

48.     The actions and conduct by Defendants, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

49.     9Round is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

50.     By reason of the foregoing, 9Round has suffered and/or will continue to suffer, irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

51.     9Round is therefore entitled to an injunction against Defendants precluding continued use of 9Round's Marks.

## Count IV
## Breach of Covenant Not to Compete

52.     9Round repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

53.     Pursuant to Section 10(D) of the Evanston Agreement, Defendants agreed not to operate exercise facilities in certain areas and to refrain from competing with 9Round upon termination of the Evanston Agreement.

54.     Pursuant to Section 10(D) of the Arlington Heights Agreement, Defendant Ken Battinus agreed not to operate exercise facilities in certain areas and to refrain from competing with 9Round upon termination of the Arlington Heights Agreement.

55.     The non-competition covenant is a substantial part of the consideration given to Defendants in exchange for the Evanston Agreement.

56.     The non-competition covenant is a substantial part of the consideration given to Defendant Ken Battinus in exchange for the Arlington Heights Agreement.

57.     The non-compete provisions of the Franchise Agreements are reasonably necessary to protect 9Round's legitimate business interests.

58.     Upon information and belief, Defendants have competed with 9Round since the termination of the Franchise Agreements.

59.     9Round has a legitimate business interest in its valuable confidential business information, substantial business relationships with existing and prospective customers, and the goodwill associated with the Marks in the Territory governed by the Franchise Agreements.

60.     As a result of the operation of a directly competitive business, 9Round has suffered irreparable harm for which it has no adequate remedy at law to protect its substantial business and property rights.

61.     9Round is therefore entitled to an injunction against Defendants precluding them from operating a competing fitness facility.

**Count V**
**Permanent Injunction**

62.     The allegations made in the preceding paragraphs of the Complaint are incorporated by reference as if fully alleged herein.

63.     In executing the Evanston Agreement, Defendants entered into a valid, binding, and enforceable contract. *See* Ex. "A."

64.     In entering into the Evanston Agreement, Defendants agreed to comply with the provisions of the Agreement, including the requirement that no guarantor be convicted of any felony.

9

65.     In entering into the Evanston Agreement, Defendants also agreed to abide by certain post-termination obligations, including, but not limited to, the obligations to not compete with Plaintiff and to immediately cease the use and display of Plaintiff's trademarks and proprietary materials.

66.     Defendant Ken Battinus also agreed to abide by non-compete covenants under the Arlington Heights Agreement.

67.     Plaintiff complied with all provisions of the Evanston Agreement.

68.     Defendants breached their obligations under the Evanston Agreement when Ken Battinus was convicted of a Class-4 Felony in the State of Illinois.

69.     Plaintiff is entitled to injunctive relief under the terms of the Evanston Agreement and Arlington Heights Agreement due to Defendants' continued use of Plaintiff's trademarks and proprietary materials, as well as Defendants' continued operation of a fitness facility at the location of 9Round's former franchise, causing irreparable harm to Plaintiff and with no other adequate remedy at law.

70.     Injunctive relief is reasonably necessary to preserve the rights of the parties during litigation to stop the use of Plaintiff's trademarks and proprietary materials, and to stop the operation of the competing facility.

71.     Plaintiff has a likelihood of success on the merits of claims against Defendants, including, but not limited to, the causes of action set forth above.

### Count VI
### Preliminary Injunction

72.     The allegations made in the preceding paragraphs of the Complaint are incorporated by reference as if fully alleged herein.

73.     Plaintiff is entitled to preliminary injunctive relief under the terms of the Agreement

due to Defendants' continued use of Plaintiff's trademarks and proprietary materials, as well as Defendants' continued operation of a fitness facility at the location of 9Round's former franchise, causing irreparable harm to Plaintiff and with no other adequate remedy at law.

74.     Preliminary injunctive relief is reasonably necessary to preserve the rights of the parties during litigation to stop the use of Plaintiff's trademarks and proprietary materials.

75.     Plaintiff has a likelihood of success on the merits of claims against Defendants, including, but not limited to, the causes of action set forth above.

**WHEREFORE**, Plaintiff 9Round Franchising, LLC prays that the Court enter a preliminary and a permanent injunction against Defendants prohibiting and enjoining Defendants from using 9Round's trademarks and other proprietary materials after termination of the Evanston Agreement and continuing to operate a fitness facility at the location of 9Round's former franchise, assess the costs of this litigation against Defendants, and for such other relief as this Court may deem just and proper.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:  _/s/ Kelly V. Milam_
Kelly V. Milam (#6298568)
Peter G. Siachos (*pro hac vice* forthcoming)
One North Franklin, Suite 800
Chicago, Illinois 60606
Phone: (312) 619-4903
Fax: (312) 565-6511
kmilam@grsm.com
psiachos@grsm.com
*Attorneys for Plaintiff 9Round Franchising, LLC*